NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0762n.06

No. 09-1287

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **MARIE JEANETTE MASON**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    BOGGS, COLE, and CLAY, Circuit Judges.

**COLE, Circuit Judge.**  Defendant-Appellant Marie Mason pleaded guilty to three criminal counts related to the arson of Agriculture Hall at Michigan State University in December 1999 and the arson of commercial logging equipment in Mesick, Michigan in January 2000.  Mason now appeals her 262-month sentence on four bases, contending that: (1) her sentence is substantively unreasonable; (2) the government breached her plea agreement; (3) statutory sentence differences in federal arson crimes violate equal protection; and (4) the rule of lenity should have been applied to her case.  For the following reasons, we **AFFIRM**.

## I.  BACKGROUND

Mason is part of the Earth Liberation Front ("ELF"), a movement committed to stopping commercial, research, and other activities that its members consider harmful to the natural environment.  The group encourages actions that violate federal and state criminal laws and often

*No. 09-1287*
*USA v. Mason*

accomplishes its goals through politically motivated violence designed to intimidate or coerce the general civilian population, private business, and government. Arson is one of the most frequently employed forms of ELF action.

Mason and her co-conspirators learned that Agriculture Hall at Michigan State University ("MSU") received government funding for plant genetic research, and on December 30, 1999, they discussed committing arson in order to destroy research records and facilities. On December 31, 1999, Mason and a co-conspirator set fire to Agriculture Hall, causing $1.1 million in property damage. Responding firefighters faced a substantial risk of physical injury in extinguishing the flames.

The next day, January 1, 2000, Mason and her co-conspirators set fire to commercial logging equipment that was parked along a road near Mesick, Michigan. Mason admitted that the arson was motivated by a desire to intimidate, coerce, and deter government agencies, private organizations, and the general public from conducting or supporting the commercial logging industry.

Pursuant to a plea agreement with the government, Mason pleaded guilty to (1) conspiracy to commit arson in violation of 18 U.S.C. § 844(n), based on both fires; (2) aggravated arson in violation of 18 U.S.C. § 844(f)(1) and (2), based on the MSU fire; and (3) arson in violation of U.S.C. § 844(i), based on the logging equipment fire. As part of her plea agreement, Mason admitted her role in the arsons and her participation in twelve prior acts of property destruction on behalf of ELF. Mason also acknowledged that she had committed between $2.5 and $7 million worth of property destruction on behalf of ELF and that the offenses charged involved, or were intended to promote, a "federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g)(5).

No. 09-1287
USA v. Mason

In return, the government promised, among other things, "not to advocate for a sentence to imprisonment of greater than 240 months, even if the final adjusted advisory Sentencing Guideline range propose[d] a higher sentence," and not "to appeal any sentence to imprisonment of at least 180 months."  (Plea Agreement, Dist. Ct. Docket No. 101, at 12-13.)

The United States Probation and Pretrial Services Office issued an Amended Presentence Investigation Report ("PSR").  Using the 2008 version of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the PSR calculated Mason's base offense level at  twenty-four.  The offense level was then increased by twelve pursuant to U.S.S.G. § 3A1.4(a) because the offense involved or was intended to promote a federal act of terrorism, increased by three because Mason held a leadership role in the offense, increased by two because there were multiple counts, and reduced by three for acceptance of responsibility.  This yielded an adjusted offense level of thirty-eight.  Mason had zero criminal history points, which would ordinarily yield a criminal history category of I, resulting in a Guidelines range of 235 to 293 months.  Because Mason qualified for the U.S.S.G. §3A1.4(b) terrorism adjustment, however, her criminal history category was increased to category VI.  The PSR therefore calculated Mason's adjusted Guidelines range at 360 to 480 months' imprisonment.

The district court overruled Mason's objection to the terrorism adjustment because her admissions in the plea agreement made it clear that the adjustment applied.  The court noted, however, that the adjustment was without gradation and declined to apply the full twelve-level enhancement, opting to sentence Mason at offense level thirty-two rather than thirty-eight.  The court also found that the terrorism adjustment's effect of increasing Mason's criminal history from

No. 09-1287
USA v. Mason

category I to category VI did not cause an overstatement of her criminal history because she had

admitted in her plea agreement to participating in a long list of uncharged crimes.

At the sentencing hearing, the government presented extensive, cumulative evidence of the

facts and circumstances surrounding the fires; ELF's "radical" nature and its claimed responsibility

for other acts of arson; and Mason's continued involvement in violent protests.  The government

phrased its sentence recommendation as follows:

> Now, the government has recommended a sentence of 240 months, your
> Honor, which we know is significantly below the advisory guideline range.  That is
> based on a number of considerations but, of course the government comes at this
> from a different perspective than the Court does.
>
> The government–[reached] these recommendations as part through [sic] a
> negotiating process, a bargaining process with the defendant, what is it worth to this
> district, what was it worth to the Eastern District of Michigan, Southern District of
> Indiana, globally what is it worth to the affected districts to have to compromise other
> ongoing investigative activities.  There is an element of market ethic, market motive
> that comes into a negotiated government recommendation, and I realize that . . . the
> Court doesn't have that consideration at all.  I'm just explaining to the Court why we
> are recommending a sentence that is so far below the bottom of the advisory
> guideline range.  Based upon all the facts and circumstances of our investigation, past
> and present, it made sense for the government to bind itself to not advocate for a
> sentence in excess of 20 years, 240 months, and we are going to stick by that even
> though arguably we might have grounds not to.  We are going to stick by that
> promise, and the government is not advocating for a sentence in excess of 240
> months.
>
> As [defense counsel] points out in his sentencing memo, and we acknowledge
> in ours, if the Court decides in the exercise of its full discretion to impose that
> sentence, while it would be ten years, 120 months below the guidelines, it would still
> be the most onerous sentence imposed in a case of this sort to date.  So based on all
> of those considerations and purely from the government's law enforcement
> perspective, we think a sentence of 240 months would be appropriate.

No. 09-1287
USA v. Mason

(Sentencing Hr'g Tr., Dist. Ct. Docket No. 201, at 70-71.)  Mason did not object at sentencing to any

of the government's statements.

The district court sentenced Mason to 240 months' imprisonment on the conspiracy count,

262 months' imprisonment on the aggravated arson count, and 180 months' imprisonment on the

arson count, all to be served concurrently.

Mason timely filed this appeal.

## II.  ANALYSIS

### A.  Substantive Reasonableness

#### 1.  Standard of Review

This court reviews a district court's sentencing determination for reasonableness under a

deferential abuse-of-discretion standard.  *United States v. Studabaker*, 578 F.3d 423, 430 (6th Cir.

2009) (citing *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)).  The reasonableness inquiry

ordinarily includes both procedural and substantive components.  *Id.* at 430-31 (citing *Gall v. United

States*, 552 U.S. 38, 51 (2007)).  However, because Mason does not challenge the procedural

reasonableness of her sentence, this court need only consider the substantive component.  *United

States v. Tristan-Madrigal*, 601 F.3d 629, 632 (6th Cir. 2010).

"The essence of a substantive-reasonableness claim is whether the length of the sentence is

'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)."  *Id.* at 632-

33.  "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily,

bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an

unreasonable amount of weight to any pertinent factor."  *Id.* at 633.  Although review for substantive

No. 09-1287
*USA v. Mason*

reasonableness must take the totality of the circumstances into account, *id.*, a sentence within the Guidelines range "warrants a presumption of reasonableness," *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009).

### 2.  Discussion

Mason argues that her sentence is substantively unreasonable because the district court: (1) failed to avoid unwarranted sentence disparities; (2) mechanically applied the U.S.S.G. § 3A1.4 terrorism adjustment; and (3) based its sentence primarily on punishment.

### (a)  Failure to avoid sentence disparities

Mason argues that her sentence is unreasonable because fifteen other defendants whose crimes caused more financial damage than hers received sentences of no more than 156 months' imprisonment.  As this court has previously stated, "'it is pointless' for defendants who receive within-Guidelines sentences to raise unwarranted-disparity claims." *United States v. Vassar*, 346 F. App'x 17, 29 (6th Cir. 2009) (quoting *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008)). "The Guidelines exist to help ensure that similarly-situated defendants are punished similarly.  Thus, '[s]entencing disparities are at their ebb when the Guidelines are followed.'" *Id.* (quoting *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006)).  Moreover, the sentencing disparities in this case are warranted because most of the defendants to whom Mason analogizes cooperated with law enforcement and received the benefit of substantial-assistance motions that lowered their Guideline ranges. *Cf. United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) (recognizing cooperation and substantial-assistance motions as a basis for warranted sentencing disparities).  It is also unclear

- 6 -

No. 09-1287
USA v. Mason

whether the sentencing courts applied the terrorism adjustment to those defendants.  Because the other defendants were not similarly situated, Mason's argument necessarily fails.

*(b)  Application of terrorism adjustment U.S.S.G. § 3A1.4*

Mason then contends that her sentence is unreasonable because the district court improperly applied the terrorism adjustment.  Relying on *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 129 S. Ct. 840 (2009), Mason argues that the district court should have declined to apply the adjustment because the Sentencing Commission promulgated the terrorism adjustment pursuant to congressional directive, not pursuant to empirical research.  This argument misconstrues *Kimbrough* and *Spears*.  Although those cases established that a district court has discretion to vary categorically from the Guidelines based on policy disagreements, neither case held that a district court is *required* to vary.  *See United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009) (noting that neither *Spears* nor *Kimbrough* "hold[s] that a district court *must* disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the Commission's 'characteristic' empirical approach"); *accord United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir. 2009); *United States v. Huffstatler*, 571 F.3d 620, 623-24 (7th Cir. 2009); *cf. United States v. Kosack*, 366 F. App'x 642, 647-48 (6th Cir. 2010) (holding that sentences imposed after *Kimbrough* and before *Spears*—and therefore before the clarification that categorical variance based on policy disagreement is permissible—should be affirmed if there is "no basis to assume that the district court was unaware of its authority" to vary categorically).  Although the district court's statement that admissions in Mason's plea agreement "require" the application of the terrorism adjustment might by itself give pause, the court's further explanation—that the PSR and the

- 7 -

No. 09-1287
USA v. Mason

indictment contained sufficient allegations to support the terrorism adjustment and that it was aware of its discretion under *Kimbrough* and *Spears*—indicates that the district court understood its authority to disagree with the terrorism adjustment, but chose not to do so.

The record does not support Mason's further contention that the district court mechanically applied the terrorism adjustment and gave that adjustment undue weight. The district court recognized that the terrorism adjustment did not provide gradation and then, rather than increasing Mason's offense level by twelve and sentencing her at offense level thirty-eight, decided to sentence her at offense level thirty-two.

*(c)  Failure to consider factors beyond punishment*

Mason also asserts that her sentence is substantively unreasonable because the district court ignored her arguments on various factors and based its sentencing determination solely on the need to punish. This argument fails because the district court discussed the relevant § 3553(a) factors and did not give unreasonable weight to any one factor.

Mason's argument that general deterrence has no correlation with sentence length and should not have been considered fails. The district court specifically stated that it had considered and rejected the argument, and this court has held that general deterrence is an appropriate consideration at sentencing. *See Phinazee*, 515 F.3d at 515-16.

The sentencing transcript belies Mason's next contention—that the district court essentially lumped together specific deterrence and the potential for rehabilitation, and therefore did not give due weight to these two factors. The district court discussed general deterrence and stated that the sentence imposed needed to send a clear signal that Mason's crimes were so violative of societal

- 8 -

No. 09-1287
USA v. Mason

norms that those convicted would be incarcerated for a substantial period of time. The district court then discussed specific deterrence and stated that it did not believe Mason's assertions that she was surprised at the scale of the MSU explosion and that she had not violated the terms of her bond by contacting other environmentalist criminals.

Mason also argues that the district court ignored her argument at sentencing that there was no need for specific deterrence because these crimes were committed while Mason was involved with one particular co-conspirator, Frank Ambrose (her ex-husband), and after these two individuals separated, neither engaged in any such illegal activity again. The district court does not appear to have addressed this argument directly in imposing the sentence. However, "district courts often (permissibly) reject defendants' sentencing arguments indirectly when they provide affirmative reasons for imposing a sentence, and we have never required district courts to respond directly to every sentencing argument." *United States v. Steeby*, 350 F. App'x 50, 52 (6th Cir. 2009). According to the PSR, Ambrose and Mason's relationship lasted from 1999 to 2006, and by concluding that Mason had contacted other environmental-activist criminals in violation of the terms of her bond in 2008, the district court seems to have implicitly rejected Mason's argument that she was not involved in any illegal behavior after she and Ambrose separated.

Finally, Mason faults the district court's reliance on testimony at sentencing that she had contacted individuals involved in criminal activity while on bond and therefore was likely to reoffend. This argument fails because the district court has authority to receive and consider a broad spectrum of information for sentencing purposes. *See* 18 U.S.C. § 3661.

- 9 -

No. 09-1287
USA v. Mason

For the reasons expressed above, we conclude that Mason has not overcome the presumption that her sentence is substantively reasonable.

**B. Violation of Plea Agreement**

Mason next asserts that the government violated her plea agreement in two instances: first, at the initial sentencing hearing, and second, through its brief on appeal. Both assertions fail.

*1. Initial Sentencing*

*(a) Standard of Review*

This court ordinarily employs de novo review in determining whether the government has violated the terms of a plea agreement. *See United States v. Quesada*, 607 F.3d 1128, 1131 (6th Cir. 2010). However, when a defendant fails to object to a purported violation at the sentencing hearing, review is for plain error. *See United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004).

"'When reviewing a claim under a plain error standard, this Court may only reverse if . . . (1) there is an error; (2) that is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *Id.* at 627 (quoting *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002)). "Plain error may be committed by the government as well as by the district court." *Id.*

*(b) Discussion*

"Plea agreements are to be enforced according to their terms." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "Because a defendant

- 10 -

No. 09-1287
*USA v. Mason*

obtains a plea agreement only at the expense of his constitutional rights, 'prosecutors are held to meticulous standards of performance.'" *Moncivais*, 492 F.3d at 662 (quoting *United States v. Vaval*, 404 F.3d 144, 152-53 (2d Cir. 2005)).  Ambiguities in a plea agreement will be construed against the government.  *Id.*

In its plea agreement with Mason, the government agreed, among other things, "not to advocate for a sentence to imprisonment of greater than 240 months."  (Plea Agreement, Dist. Ct. Docket No. 101, at 12.)  Mason asserts that, although the government adhered to the letter of the plea agreement and recommended a sentence of 240 months, its vigorous advocacy during the sentencing hearing violated that agreement nonetheless.

First, Mason alleges that the government advocated for a sentence in excess of 240 months by presenting evidence at the sentencing hearing of facts that the PSR and stipulations in the plea agreement had already established.  In *Moncivais*, this court distinguished between "advocacy, on one hand, and providing the district court with relevant factual information, on the other hand."  *Id.* at 664.  The conduct in this case undoubtedly constituted advocacy, because the government was not providing any new factual information to the district court.  *Cf. United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000) (prosecutor advocated when his comments "did not provide the district judge with any new information or correct any factual inaccuracies").  However, that fact is not dispositive because the plea agreement allowed the government to advocate for a sentence up to 240 months. Furthermore, there is evidence that advocacy was warranted in this case because Mason was seeking a sentence far below the government's lower limit of acceptability, 180 months, and pursuing a nonfrivolous, disparity-based strategy to do so.  Although Mason argues that the government

- 11 -

*No. 09-1287*
*USA v. Mason*

presented more evidence than necessary under the circumstances to persuade the district court to meet but not exceed its target of 240 months' imprisonment, she has provided no support for this contention. Indeed, the adjusted Guidelines range that the district court ultimately settled on was 210-262 months; at that range, it was appropriate for the government to advocate for a sentence closer to 240 months than 210 and to present evidence in support of its position.

The government's advocacy in this case did not constitute error. While some courts have concluded that the government's advocacy violated a plea agreement, those cases involved promises not to recommend a sentence at all. *See, e.g.*, *Mondragon*, 228 F.3d at 980; *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992) (holding that the government breached its promise "not to recommend what sentence should be imposed" when it included in sentencing memoranda a "'diatribe' about [the defendant's] noncooperation and how noncooperation must be deterred to stave off the encroaching criminal element"). In contrast, the circumstances in this case—that the government could not advocate for more than 240 months but would not support a sentence less than 180 months, that Mason was targeting a sentence below 180 months, and that the adjusted Guidelines range encompassed sentences below 240 months—justified the government's actions.

Second, Mason contends that the government violated the plea agreement by discussing the sentencing-recommendation provision of the plea agreement in a way that, in effect, urged the district court to disregard it. Specifically she argues that, by commenting multiple times on the district court's sentencing discretion, emphasizing that its "market ethic, market motive" was in contrast with the district court's motives, emphasizing how its recommendation was "so far below" the Guidelines

No. 09-1287
*USA v. Mason*

range, and obliquely suggesting that Mason had violated the plea agreement, the government undermined and effectively urged the district court to disregard its sentencing recommendation.

The government is not required to support enthusiastically an agreed-upon recommendation. *United States v. Benchimol*, 471 U.S. 453, 455-56 (1985). However, satisfying plea agreement obligations "'requires more than lip service on a prosecutor's part[; Supreme Court case law] proscribes not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'" *Moncivais*, 492 F.3d at 662 (quoting *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000)) (internal quotation marks and brackets omitted).

Mason analogizes to *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992), in which the First Circuit held that the government had breached its agreement to recommend a 36-month sentence when it failed to make the recommendation explicitly, its "references to the agreement were grudging and apologetic," and it urged the district court to impose "a lengthy period of incarceration." *Id.* at 269. The *Canada* court held that the government had only "paid 'lip service' to the negotiated agreement" and that, "[w]hile a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." *Id.* at 270. The prosecutor, the court continued, "was not at liberty to cut off the government's agreement at the knees" and must "refrain[] from conspicuously undermining its agreed position." *Id.*

The prosecutor's statements in this case do not rise to the level of "inject[ing] material reservations about the agreement" found in *Canada*. Viewing the colloquy in full, we are not of the view that the government was attempting to avoid upholding its part of the bargain. This is bolstered

- 13 -

*No. 09-1287*
*USA v. Mason*

by the fact that the prosecutor in Mason's case explicitly recommended 240 months, a fact that was not present in *Canada*.  *Cf., e.g.*, *Barnes*, 278 F.3d at 648 (holding that the prosecutor's failure to expressly make an agreed-upon recommendation breached the plea agreement).

> 2.  *Appeal*

Mason also argues that the government's appellate brief, which "attempts to justify" the district court's 262-month sentence, is "in violation of the plea agreement." (Appellant Reply Br. 2.) Mason's attempt to characterize the government's defense of a sentence on appeal as "advocating for" a certain sentence necessarily fails.  On appeal, the issue is not what the appropriate sentence should be, but whether the sentence was imposed in violation of law.  Defending the legality of a sentence is not the same as advocating for a particular sentence.  The government must be allowed to take the position that a sentence that is higher than its recommendation was nonetheless imposed in accordance with the law.

No. 09-1287
USA v. Mason

### C.  Equal Protection Claim

The MSU fire created a substantial risk of personal injury, but did not actually cause injury. The statutory penalty for this type of arson—causing risk of injury but not actual injury—is harsher under 18 U.S.C. § 844(f), the provision governing arson of a federally funded building, than under 18 U.S.C. § 844(i), the provision governing arson of a building used in interstate commerce.  Mason contends that this distinction violates equal protection, and thus that she should have been sentenced under the lesser penalties of § 844(i).

Because Mason did not object to her sentence on equal-protection grounds at the district court level, we review her claim for plain error.  *See United States v. Dedman*, 527 F.3d 577, 591 (6th Cir. 2008).  This court applies a rational-basis review to legislative distinctions that do not involve "a suspect classification based on race or other forbidden grounds." *United States v. Dunham*, 295 F.3d 605, 610 (6th Cir. 2002).  A classification subject to rational-basis review violates equal protection if it is not rationally related to a legitimate government purpose.  *See Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005).

Mason's argument fails because the difference in punishment under § 844(i) and § 844(f) is rationally related to the legitimate government interest of protecting government-funded institutions and employees of those institutions.  *Cf. United States v. Batchelder*, 442 U.S. 114, 124-25 (1979) (holding that the imposition of different imprisonment terms under different, but partially overlapping, firearm-possession statutes does not violate equal protection).  The arson statute is similar to other statutes that protect government property, *see, e.g.*, 18 U.S.C. §§ 641, 666, 1361, and

No. 09-1287
USA v. Mason

U.S.S.G. provisions that impose harsher penalties for harm to the government, *see, e.g.*, U.S.S.G. § 5K2.7.

### D. Rule of Lenity

Finally, Mason contends that the differences in punishment under § 844(f) and § 844(i) render that statute ambiguous such that the district court should have applied the rule of lenity to sentence her under the lesser penalties of § 844(i).

This court reviews questions of statutory interpretation de novo. *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001). However, because Mason raises the issue for the first time on appeal, plain-error analysis applies. *Id.*

The rule of lenity "'applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" *Burgess v. United States*, 553 U.S. 124, 135 (2008) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). The sections at issue are not ambiguous because their plain language indicates that § 844(f) governs arson of a federally funded building, while § 844(i) governs arson of a building used in interstate commerce. Although federally funded buildings may also be used in interstate commerce such that a defendant—such as Mason—could be charged under both provisions for the same arson, this overlap in coverage does not render the statute ambiguous. *See Batchelder*, 442 U.S. at 121-22 ("[T]hat [a statute] provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language."). Mason's rule of lenity argument therefore fails.

### III. CONCLUSION

For the preceding reasons, Mason's sentence is **AFFIRMED**.

- 16 -

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Leonard Green
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 15, 2010

Mr. Hagen W. Frank
U.S. Attorney's Office
P.O. Box 208
Grand Rapids, MI 49501

Mr. Anastase Markou
Levine & Levine
427 S. Burdick Street
Kalamazoo, MI 49007

                    Re:  Case No. 09-1287 , *USA v. Marie Mason*
                         Originating Case No. : 08-00047-001

Dear Counsel,

    The Court issued the enclosed Opinion today in this case.

                                        Sincerely yours,

                                        s/Sue Burlage
                                        Case Manager
                                        Direct Dial No. 513-564-7012

cc:  Ms. Tracey Cordes

Enclosure

Mandate to issue